UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| TONY KENYON, | ) | Civ. 13-4109-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WARDEN DOOLEY, Director of Prison Operations; DEPARTMENT OF HEALTH, Prison Health Service Department; DR. REIGER, provider; DARL DEIDE, Pheasantland Industries; and STROMAB SPA MANUFACTURING COMPANY, | ) ) ) ) ) ) ) ) ) ) | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| Defendants. | ) | |

Plaintiff, Tony Kenyon, is an inmate at the South Dakota State Penitentiary (SDSP) in Sioux Falls, South Dakota. On October 7, 2013, Kenyon filed a pro se civil rights lawsuit pursuant to 42 U.S.C. § 1983, alleging that defendants violated his rights under the Eighth Amendment by failing to inspect equipment, follow the recommendations of his doctor, and provide adequate aftercare, therapy, and pain management. Docket 1. On February 28, 2014, defendants Warden Dooley, Department of Health, Dr. Regier, and Darl Diede moved for summary judgment.[1] Dockets 29. Kenyon did not respond to

---

[1] Movants exclude Stromab Spa Manufacturing Company from their motion because Stromab is unaffiliated with the state. To state a claim for relief under 28 U.S.C. § 1983, a plaintiff must allege sufficient facts to show "(1) that

defendants' motion for summary judgment, and the time for response has passed. Kenyon did file a reply to defendants' answer on April 24, 2014. Docket 30. After consideration, the court grants defendants' motion for summary judgment.

## FACTUAL BACKGROUND

Viewed in a light most favorable to Kenyon, the nonmoving party, the facts are as follows[2]:

Defendant Warden Dooley is the Director of Prison Operations of South Dakota Department of Corrections (SDDOC) since June 2013. Defendant E.R. Regier, M.D., has provided medical care to inmates at SDSP since May 2001.

---

the defendant acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). Because Kenyon has not alleged that Stromab was acting under color of state law when it manufactured the Tiger saw, Kenyon has not stated a claim on which relief may be granted as to Stromab. Therefore, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii), the claims against Stromab are dismissed without prejudice.

[2] Pursuant to Local Rule 56.1.B "[a] party opposing a motion for summary judgment will respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citation to the record;" and pursuant to Local Rule 56.1.D "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts." Although plaintiff's response was not to movants' statement of material facts and did not align with it, the court will consider it because prisoners proceeding pro se are entitled the benefit of a liberal construction at the pleading stage. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987).

Darl Diede is Director of Pheasantland Industries at SDSP since March 2012. Kenyon is an inmate in the custody of the South Dakota Department of Corrections (SDDOC).

While in the custody of the SDDOC, Kenyon worked in the cabinet shop. As a condition precedent to his working at the cabinet shop, Kenyon was required to undergo training by a fellow inmate on the proper operation of the equipment, sign an "Operation Training Sheet" to certify he understood how to properly operate the equipment, and attend weekly safety meetings.[3] Staff also conducted weekly inspections to make sure the equipment was operational.[4] Dockets 26; 25-27; 25-29.

At approximately 2:45 p.m., on June 27, 2013, Kenyon went to clean the Tiger-Stop Saw, as he had done many times before. After triggering the emergency shut off switch by opening the door, he reached into the saw. The fourth time he reached into the saw, the blade turned back on and cut off his index finger, also damaging his middle finger in the process. Docket 1. Immediately after the accident Kenyon was taken to Health Services to have his

---

[3] According to Kenyon's reply to defendants' answer, the safety meetings were nothing more than an inmate going around with a log sheet and asking Kenyon and the other inmates to sign it. Docket 30.

[4] In Kenyon's reply he alleges that staff did not physically check the equipment during the inspections. Docket 30.

injury examined. Here, Kenyon stated that he "knew better than to do that" and that "[i]t was [his] fault. [He] wasn't paying attention."[5] Docket 25-30.

Kenyon was soon transported by ambulance to the Emergency Room at McKennan Hospital in Sioux Falls, South Dakota. At the hospital, Kenyon underwent metacarpophalangeal (MCP) fusion of the finger. Kenyon was not given his prescribed pain medication until 36 hours after he was released from the hospital. Docket 30. Kenyon saw Dr. Scott McPherson regularly after the surgery. Dr. McPherson told Kenyon to perform exercises with his fingers and Health Service's staff provided Kenyon with a PTEX home exercise program. It took 3½ weeks for the hospital to send Kenyon to physical therapy. Docket 30. Kenyon's hand was put in a splint and Dr. McPherson advised Kenyon of the possibility of amputation. During the multiple follow-up appointments, Kenyon's hand was x-rayed many times before Dr. McPherson finally determined that the finger was only getting in Kenyon's way and should be removed. Kenyon agreed with Dr. McPherson's recommendation, and Kenyon's finger was amputated.

Following amputation, Kenyon was prescribed Hydrocodone, Ibuprofen, and Tramadol. Kenyon was not given his prescribed medication until 38 hours after he was released from the hospital. Docket 30. When Kenyon returned to

---

[5] In Kenyon's reply he clarifies that he meant that he knew better than to trust the safety switch. Kenyon does not clarify what he meant by "I wasn't paying attention." Docket 30.

SDSP he was given Lortab[6] and Ibuprofen.  Staff elected to withhold the Tramadol because Tramadol mixed with Lortab can cause respiratory depression and its addictive qualities can be subject to abuse. Dr. Regier did not examine Kenyon's hand before making this decision. Docket 30. When an outside provider prescribed Tylenol #3 because Kenyon was continuing to experience pain, however, staff decided that considering Kenyon's susceptibility to liver damage, it would be safer to place him back on Tramadol. Health Services increased Kenyon's prescription upon his request. Kenyon reported that the drugs were working to "take the edge off of pain." Docket 25-28.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence,[7] viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); *see also* Fed. R. Civ. P. 56(a). A genuine issue of material fact contains enough facts to state a claim to relief that is plausible on its face, not merely conceivable. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If a claim for

---

[6] Lortab is substantially similar to Hydrocodone.

[7] The evidence includes the pleadings, depositions, documents, electronically stored information, stipulations, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c).

relief is factually unsupported, summary judgment is appropriate to dispose of the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotations and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although "the court is required to . . . give [the nonmoving] party the benefit of all reasonable inferences to be drawn from the underlying facts," *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980), the nonmoving party may not "rest upon mere denials or allegations." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Instead, the nonmoving party must "set forth specific facts sufficient to raise a genuine issue for trial." *Id.*

Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam*, 821 F.2d at 522. Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of

material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Moreover, the court is not "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980).

## DISCUSSION

Kenyon asserts that defendants acted in deliberate indifference toward his serious medical needs by failing to protect him from injury, follow his doctor's orders, and provide adequate aftercare, therapy, and pain management. Defendants assert that they are entitled to summary judgment on Kenyon's § 1983 claims because Kenyon stated claims on which relief cannot be granted.

**I.     Defendants Are Entitled to Summary Judgment on Count I.**

Among defendants named for having failed to protect Kenyon from injury by not inspecting machinery or properly training Kenyon are: E.R. Regier, M.D., a medical provider; Warden Dooley, the Director of Prison Operations; and South Dakota Department of Health. These defendants argue that they are not involved in the daily operations of the cabinet shop and cannot be liable for

failing to inspect machinery or improperly training Kenyon. Defendants further argue that even if Dooley could be responsible for failing to implement proper training procedures, Kenyon has not raised enough facts to show that Dooley was deliberately indifferent to a need for different training. Moreover, defendants argue that Kenyon has failed to establish that defendants, including Diede, were aware of a risk and that defendants disregarded that risk.

To prevail on an Eighth Amendment claim for a failure to protect, a plaintiff must show that a defendant was *personally involved* in the alleged deprivation of rights and *deliberately interfered* with those rights. *See DuBois v. Dooley*, 277 F. App'x 651, 652 (8th Cir. 2008). To establish deliberate interference, plaintiff "must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (citations omitted).

A deliberate indifference to act is also a form of deliberate interference. *See Coleman*, 114 F.3d at 785. To show deliberate indifference, an inmate must demonstrate that a prison official knew the "inmate face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it."*Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). For example, "the need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that

8

[defendants] can reasonably be said to have been deliberately indifferent to the need." *Ambrose v. Young*, 474 F.3d 1070, 1079-80 (8th Cir. 2007) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)). Prison officials are deliberately indifferent when they "knowingly . . . compel convicts to perform physical labor . . . which constitutes a danger to their . . . health." *Choate v. Lockhart*, 7 F.3d 1370, 1374 (1993) (citing *Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir. 1977)). Mere negligence does not constitute deliberate indifference. *Warren v. Missouri*, 995 F.2d 130, 131 (8th Cir. 1993).

In the instant case, Dr. Regier's work involving providing prisoners with medical care, gave him no contact with the cabinet shop or the Tiger saw. Dooley's work, involving the general prison operations, also gave him little contact with the cabinet shop. Because defendants Dr. Regier and Dooley were not involved daily in the cabinet shop operations, they are not responsible for failing to inspect the saw.[8] Diede supervised the cabinet shop and in theory could be held responsible for a failure to inspect. But the undisputed evidence shows that staff conducted weekly inspections of the equipment, including inspection of the saw. Furthermore, no inmate told Diede or any other staff that the saw was not working properly. Therefore, there is no evidence that Diede failed to inspect the tools and even if such evidence existed, any failure on the part of Diede was not deliberate.

---

[8] Health Services, as an agency, also cannot be personally involved because it is not a person for the purposes of § 1983. *Rawlings v. Iowa Department of Human Services*, 820 F. Supp. 423, 425 (D. Iowa 1993).

Even if Diede and Dooley were personally involved in Kenyon's training as the supervisor of the cabinet shop and the director of operations, Kenyon has not identified how Diede or Dooley failed to properly train him. Kenyon was required to attend safety meetings and Kenyon was given training to use the saw. Kenyon signed a certificate acknowledging he understood the safety protocol. Thus, neither Diede nor Dooley had any reason to believe Kenyon did not understand how to operate the saw safely. Therefore, Kenyon has presented no facts that indicate that either defendant knew the training was inadequate or any facts showing it was in fact inadequate. Accordingly, defendants are entitled to judgment as a matter of law.

## II.     Defendants Are Entitled to Summary Judgment on Count II.

Kenyon alleges that defendants "failed to follow the orders of the physician" and that they failed to provide him with adequate aftercare, therapy, and pain management. To prevail on an Eighth Amendment claim for a failure to protect, a plaintiff must first show that a defendant was *personally involved* in the alleged denial of health care or interference in treatment. *See DuBois*, 277 F. App'x at 652). As a preliminary matter, defendants Dooley and Diede were not personally involved in the denial of or interference with Kenyon's health care because they are not medical providers and all health complaints are directly sent to nurses who notify the providers. Regardless, even if all the named defendants could be responsible, the undisputed facts reveal that

defendants did not deliberately deny or interfere with Kenyon's health care or treatment.

To prevail on an Eighth Amendment claim, Kenyon must show that defendants *deliberately interfered* with his health care or treatment. *Id.* "[A]n inmate must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind." *Coleman*, 114 F.3d at 784 (citations omitted). The defendants must have been "deliberately indifferent to the inmate's *serious* medical needs." *Id.* (citing *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995)) (emphasis added). "A *serious* medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Coleman*, 114 F.3d at 784 (quoting *Camberos*, 73 F.3d at 176)) (emphasis added). To establish deliberate indifference, an inmate must demonstrate that a prison official knew the "inmate face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Id.* at 785 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

A plaintiff's disagreement with the course of treatment does not amount to a constitutional deprivation. *See Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) (stating that medical staff are not required to provide the type of treatment that an inmate requests)*; see also Estate of Rosenberg by Rosenberg*

11

*v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) ("[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation."); *see also Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("[I]nmates have no constitutional right to receive a particular or requested course of treatment . . . .").

In the instant case, it is undisputed that Kenyon's condition is a serious medical need. Kenyon, however, has not introduced facts that show Health Services' actions or interference were sufficiently serious. Health Services interfered with Kenyon's treatment against the physician's recommendation by switching his pain medication from Tramadol to Lortab. This had little effect on Kenyon's aftercare pain management because Lortab is a drug with substantially the same components as Tramadol. The staff elected to switch the medication because Tramadol mixed with Lortab can cause respiratory depression and its addictive qualities can be subject to abuse. Additionally, Kenyon was later put on Tramadol.[9] If the pain medications were not helping, medical staff and Dr. Regier had no way of knowing because Kenyon reported that the drugs were working to "take the edge off of pain." Docket 25-28. Additionally, when Kenyon requested more medication, Health Services

---

[9] When Kenyon was still experiencing pain, his medical provider recommended Tylenol #3 be added to Kenyon's list of medications. Medical staff decided to place Kenyon back on Tramadol because Kenyon's susceptibility to liver damage put him at greater risk for health problems if placed on Tylenol #3.

increased Kenyon's dosage. Considering that the staff's decisions were based on Kenyon's history of addiction and susceptibility to liver damage, the court will not disturb the medical staff's professional judgment to change Kenyon's medications.

Additionally, Kenyon alleges that Health Services interfered with his treatment by delaying in giving him the pain medication. "[T]he objective seriousness of the deprivation should be measured by reference to the effects of delay in treatment." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997); *see also Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). Because of the delay in providing medication, Kenyon claims he experienced pain and discomfort for at least 36 hours after release from the hospital after the original accident and 38 hours after release from the hospital after the amputation. Docket 30. Mere discomfort, however, does not arise to the level of "a detrimental effect." *Laughlin*, 430 F.3d at 929. Moreover, Kenyon has failed to provide the court with facts showing that the staff was supposed to provide him with medication right after surgery.[10]

Kenyon also alleges Health Services and Dr. Regier did not provide him with adequate therapy. Dr. McPherson taught Kenyon the finger exercise he wanted Kenyon to perform and medical staff provided Kenyon with a PTEX

---

[10] After his hospital release, Kenyon was likely still on the medication from the surgery.

home exercise program. Additionally, Health Services contacted CORE Orthopedics and was told that Kenyon did not need to see anyone to complete the exercises on his own. Kenyon has stated nothing to suggest that the finger exercises were inadequate or unconventional therapy. Kenyon has provided no reason for why he could not complete the exercises on his own. His allegation seems to amount to nothing more than a disagreement with the course of treatment and a dissatisfaction with his amputation.

Kenyon last alleges that he was provided inadequate aftercare. Following the procedure, however, Kenyon was seen by Dr. McPherson on a regular basis. Staff did not change Kenyon's dressing upon request because CORE Orthopedics instructed them not to. While physical therapy was delayed, absent facts showing that the delay seriously harmed Kenyon, a delay in setting appointments does not satisfy the objectively serious interference threshold. *See Crowley*, 109 F.3d at 502; *see also Laughlin*, 430 F.3d at 929. Dr. McPherson discussed the possibility of amputation with Kenyon as early as July 12, 2013. Docket 25-28. Kenyon has not shown how a three to four week delay in therapy increased his chances for amputation. Accordingly, Kenyon has failed to show that defendants possessed the necessary culpable state of mind or that the interference was sufficiently serious. Therefore, defendants are entitled to judgment as a matter of law. It is

ORDERED that defendants Dooley, Department of Health, Regier, and Diede's motion for summary judgment (Docket 24) is granted.

IT IS FURTHER ORDERED that the claims against Stromab Spa Manufacturing Company are dismissed without prejudice pursuant to 28 U.S.C. §1915(e)(2)(B)(i)-(iii).

Dated July 25, 2014.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE